UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re

COPPERFIELD INVESTMENTS, LLC,

                                Debtor.
----------------------------------------------------------------X

Case No. 07-71327-CEC

Chapter 11


<u>DECISION</u>

APPEARANCES:

Douglas Furth, Esq.
Ancela R. Nastasi, Esq.
Anthony Vassalo, Esq.
Golenbock, Eisman, Assor Bell & Peskoe
437 Madison Avenue
New York, New York 10022
Attorneys for David Pauker, Plan Administrator
of the Third Amended Plan of Liquidation for
Copperfield Investments, LLC

John F. Cambria, Esq.
Grant Stein, Esq.
Jason H. Watson, Esq.
Catherine R. Fenoglio, Esq.
Alston & Bird, LLP
90 Park Avenue
New York, New York 10016
Attorneys for Ficus Investments, LLC and
Private Capital Group, a Florida limited liability
company


Bennette D. Kramer, Esq.
John M. Lundin, Esq.
Niall D. O'Murchadha, Esq.
Schlam, Stone & Dolan LLP
26 Broadway
New York, New York 10004
Attorneys for Private Capital Management Corp.

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of Private Capital Management Corp. ("PCMC") seeking authority to commence an adversary proceeding on behalf of the bankruptcy estate of Copperfield Investments, LLC (the "Debtor") to recover allegedly fraudulent conveyances from third parties, and to assert claims of breach of fiduciary duty, conversion, and unjust enrichment. PCMC's motion is opposed by David Pauker (the "Plan Administrator"), the administrator of the Debtor's Third Amended Plan of Liquidation, as well as Ficus Investments, Inc. ("Ficus") and Private Capital Group, LLC ("PCG FL," and together with Ficus, the "Ficus Entities"). Because PCMC has no economic interest in the outcome of the proposed litigation, it lacks standing to seek authority to prosecute the litigation on the estate's behalf, and PCMC's motion for derivative standing is therefore denied.

Jurisdiction

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. § 1142, the Eastern District of New York standing order of reference dated August 28, 1986, and the order dated June 5, 2009, confirming the plan of reorganization in this case. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

Background

The following facts are undisputed.

1.    The Commencement of the Case, the Appointment of the Chapter 11 Trustee, and the Filing of Claims and Objections to Claims by the Ficus Entities and the Donovan Entities

On April 17, 2007, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor was in the business of holding and servicing real estate mortgages

and the underlying debts.  The Debtor did not have any employees, and other entities serviced the

Debtor's mortgage portfolio.  At the time of filing, the Debtor's assets consisted primarily of

mortgage loans and cash, as well as claims belonging to the estate.

On April 20, 2007, Ficus filed a motion to dismiss the case, or alternatively, to appoint a

chapter 11 trustee, and also sought relief from the automatic stay to continue an action pending in

New York state court.  On April 26, 2007, the Court granted Ficus's motion to the extent it

sought appointment of a chapter 11 trustee.  On May 1, 2007, David Pauker was appointed as

trustee of the Debtor's bankruptcy estate.

On October 12, 2007, PCG FL filed proof of claim 22 and Ficus filed proof of claim 23,

each asserting a general unsecured claim in the amount of $139,805,374.19 for damages,

including the initial value of the mortgages and any profits realized, based on the Debtor's failure

to comply with certain contracts.  Both entities also asserted that they own all, or substantially

all, of the Debtor's alleged assets.  On that same date, PCMC filed proof of claim 21 against the

Debtor asserting an "equity interest [in the D]ebtor."

On March 3, 2008, PCMC filed an objection to claim 23, arguing that the claim belongs

to PCG FL and not Ficus.  On August 14, 2008, PCMC, Private Capital Group, LLC, a Nevada

limited liability company ("PCG NV"), and Private Capital Corp. ("PCC," and, together with

PCMC, and PCG NV, the "Donovan Entities") filed an objection to claim 22, arguing, among

other things, that the claim was partially satisfied, and that PCG FL failed to substantiate its

claim.

On October 15, 2007, PCG NV filed proof of claim 33, asserting an unliquidated unsecured claim for "reimbursement of expenses paid" and "net profits owed from Debtor."  On that same date, PCC filed proof of claim 35, asserting a general unsecured claim for $650,000.

On November 21, 2007, the Ficus Entities filed objections to certain claims, including claim 33.  The trustee also filed an objection to claim 33.  A year later, on November 21, 2008, the trustee filed a motion to classify the claims of the Donovan Entities, including claim 33, as equity claims.

2.      The Confirmation of the Plan

On January 6, 2009, the trustee filed the Third Amended Chapter 11 Plan of Liquidation (the "Plan"), which amended a plan previously filed.  The Plan provided for payment in full of all administrative expenses, priority tax claims, and allowed unsubordinated claims, except for the Ficus Entities' claims, and administrative claims asserted by PCG FL.  The Plan further provided that, to the extent all allowed claims are paid in full, and all reserves for other claims (including disputed claims) are fully funded, the trustee, who would become the plan administrator, "may, in [his] sole discretion, seek approval of the Court to have all remaining property of the [Debtor] (including any causes of action) conveyed to the [Ficus Entities]."  (Plan ¶ 8.2.)

The Ficus Entities voted in favor of the Plan.  The Plan treated the claims of the Donovan Entities as equity interests, including claim 33, and provided for no distribution under the Plan on account of any of the equity interests.  Therefore, pursuant to § 1126(g),[1] the Donovan Entities were deemed to have rejected the Plan.  The Donovan Entities also objected to the Plan.

---

[1] Unless otherwise specified, all statutory references are to the Bankruptcy Code, 11 U.S.C.

On June 5, 2009, the Court so-ordered a stipulation between the trustee, the Ficus Entities, and the Donovan Entities providing for the withdrawal of the Donovan Entities' objections to the confirmation of the Plan.  Pursuant to the stipulation, claims 33 and 35 were allowed as convenience class claims in the amount of $500,000 each, with no distribution to be made on account of such claims, but with the proviso that those claims may be used to offset any judgment awarded to the trustee in the Pauker Adversary Proceeding (defined below).

Also pursuant to the stipulation, PCMC's claim 21was classified, but not allowed, as an equity interest.  Therefore, PCMC has, at most, an equity interest in the Debtor.

On June 5, 2009, the Court entered an order confirming the Plan.  No appeal was taken from the order confirming the Plan, or from the approval of the stipulation classifying PCMC's claim as an equity interest.

3.    The Motion for Derivative Standing

On April 15, 2009, the trustee commenced an adversary proceeding (the "Pauker Adversary Proceeding") against numerous defendants, including the Donovan Entities, to recover transfers made by the Debtor to those defendants.  The Pauker Adversary Proceeding is currently being prosecuted by the Plan Administrator.

On September 30, 2009, PCMC, a defendant in the Pauker Adversary Proceeding, filed this motion seeking derivative standing to commence an adversary proceeding to avoid pre-petition and post-petition transfers of the Debtor's property, and to assert claims of unjust enrichment, breach of fiduciary duty, and conversion against Lawrence Cline, allegedly a former manager of the Debtor, and various entities affiliated with him, as well as Peter Shancupp, an attorney alleged employed by PCG (FL) (the "Alleged Transferees").  PCMC asserts that, even

though it will receive nothing from the proceeds of any recoveries, it should be allowed to assert these claims on the estate's behalf against the Alleged Transferees because "in the event that the transfers described in the [Pauker] Adversary [Proceeding's c]omplaint are found to be improper, the Debtor would be entitled to the same relief against the [Alleged] Transferees, who have engaged in or benefitted from transactions either identical or substantially similar to those described in the [Pauker] Adversary [Proceeding's c]omplaint."  (PCMC Mot. ¶ 2.)

It appears that some, but not all, of the claims which PCMC seeks to assert are claims in which PCMC believes that the defendants in the Pauker Adversary Proceeding may be jointly liable with the Alleged Transferees.  PCMC argues that its "pecuniary interests are clearly affected – the [Pauker A]dversary [P]roceeding seeks recovery from [PCMC] for some of the same transfers for which the derivative action seeks to hold the [Alleged Transferees] liable." (PCMC Reply ¶ 11.)   PCMC argues that the Plan Administrator has unjustifiably refused to commence an adversary proceeding against the Alleged Transferees, notwithstanding the colorable claims and potential benefit to the estate.

The Plan Administrator and the Ficus Entities objected to PCMC's motion, arguing that PCMC is barred from seeking this relief because the Plan vests only the Liquidating Debtor with the right to assert the Debtor's causes of action.  The Plan Administrator and the Ficus Entities also argue that the Court should deny PCMC derivative standing to commence the action against the Alleged Transferees because, as a holder of a classified, but not allowed, equity interest on account of which no distribution will be made under the Plan, PCMC has no economic interest in the outcome of the proposed adversary proceeding.

Discussion

Upon the filing of a bankruptcy petition, all property of the debtor, including causes of action, becomes property of the bankruptcy estate.  11 U.S.C. § 541(a); Seinfeld v. Allen, 169 Fed. Appx. 47, 49 (2d Cir. 2006) (quoting Mitchell Excavators, Inc. v. Mitchell, 734 F.2d 129, 131 (2d Cir. 1984)).  Upon the appointment of a trustee pursuant to § 1104, the trustee becomes the representative of the estate, and is responsible for investigating and asserting the estate's claims.  11 U.S.C. §§ 704, 1106; Hartford Underwriters Inc. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 8-9 (2000) (trustee's role is "a representative of the estate with respect to the initiation of certain types of litigation that belongs exclusively to the estate"); Unsecured Creditors Comm. v. Noyes (In re STN Enters.), 779 F.2d 901, 904 (2d Cir. 1985) ("Usually a trustee . . . initiates proceedings to recovery preferentially or fraudulently transferred assets.").

The Second Circuit has held that §§ 1103(c)(5) and 1109 include an "implied, but qualified right" of a creditors' committee to assert colorable claims on behalf of the estate if the debtor or trustee unjustifiably refuses to bring suit.[2]  STN, 779 F.2d at 904.  This derivative standing doctrine has been expanded to allow a debtor's individual creditors or equity holders to bring suit on behalf of the debtor, provided the requisite showing is made.  Official Comm. of Equity Holders of Adelphia Commc'ns Corp. v. Official Comm. of Unsecured Creditors of Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 544 F.3d 420 (2d Cir. 2008)

---

[2] Or, "[a] creditors' committee may acquire standing to pursue the debtor's claims if (1) the committee has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is 'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.), 262 F.3d 96, 100 (2d Cir. 2001) (quoting In re Spaulding Composites Co., 207 B.R. 899, 904 (9th Cir. BAP 1997)).

(equity security holders); Glinka v. Murad (In re Housecraft Inds. USA, Inc.), 310 F.3d 64, 71 n.

7 (2d Cir. 2002) (individual creditors).  The party seeking derivative standing bears the burden of

establishing, by competent evidence, that the proposed claims are colorable and that the trustee

unjustifiably refused to bring suit.  PW Ents., Inc. v. N.D. Racing Comm'n (In re Racing Servs.,

Inc.), 540 F.3d 892, 900 n.8 (8th Cir. 2008).

The inquiry into whether claims are colorable focuses on whether the claims would

survive a defendant's motion to dismiss.  In re Hydrogen L.L.C., No. 08-14139, 2009 WL

2913448, at 1 (Bankr. S.D.N.Y. May 7, 2009); Official Comm. of Unsecured Creditors of the

Debtors v. Austin Fin. Servs., Inc. (In re KDI Holdings, Inc.), 277 B.R. 493, 508 (Bankr.

S.D.N.Y. 1999); Official Comm. of Unsecured Creditors of Am.'s Hobby Ctr., Inc. v. Hudson

United Bank (In re Am.'s Hobby Ctr., Inc.), 223 B.R. 275, 282 (Bankr. S.D.N.Y. 1998).  If the

claims are colorable, the court must then evaluate the benefit to the estate of asserting the claims,

taking into consideration the costs that will be incurred by the estate in the litigation.  STN, 779

F.2d at 905-906.  While the court need not conduct "a mini-trial" on these factors, "it should

assure itself that there is a sufficient likelihood of success to justify the anticipated delay and

expense to the bankruptcy estate that the initiation and continuation of litigation will likely

produce." STN, 779 F.2d at 905-906.  This consideration is important because it "helps prevent

committees and individual creditors from pursuing adversary proceedings that may provide them

with private benefits but result in a net loss to the entire estate." AppliedTheory Corp. v. Halifax

Fund, L.P. (In re AppliedTheory Corp.), 493 F.3d 82, 86 (2d Cir. 2007).

PCMC seeks derivative standing to assert claims belonging to the Debtor.  Thomas B.

Donovan, a director of PCMC, has stated, under penalty of perjury, that PCMC will seek

reimbursement of the legal fees incurred by litigating the derivative action on a contingency basis, not to exceed one-third of the total recovery.  Therefore, PCMC argues, the estate only stands to benefit from the proposed litigation.  PCMC further argues that the proposed action will not delay this bankruptcy case because most of the discovery has already been obtained in other pending actions, and the related discovery would also be sought in the Pauker Adversary Proceeding.  PCMC seeks to establish its standing to seek authority to pursue this litigation by arguing that some of the transfers it seeks to recover from the Alleged Transferees are transfers which the Plan Administration has sought to recover from PCMC and the other defendants in the Pauker Adversary Proceeding.

The Plan Administrator and the Ficus Entities argue that the Court should deny PCMC's request for derivative standing because PCMC lacks standing to make such a motion, given that it will not receive any distribution under the Plan.  They also note that the Plan specifically provides that, on the effective date of the Plan, all of the Debtor's property, including causes of action, shall vest in the  liquidating debtor, and that the Plan Administrator is vested with the right to prosecute, settle, or dispose of any cause of action that could be asserted by the debtor. See Plan ¶¶ 12.2(j); 13.2.  They contend, therefore, that PCMC's request for derivative standing is also barred by the terms of the Plan and the order confirming the Plan.

PCMC's request for derivative must be denied because PCMC has no economic interest in the outcome of the proposed litigation, and therefore has no standing to seek authority to prosecute the litigation on the estate's behalf.  "Standing is a threshold issue in every federal litigation." Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.), 417 B.R. 197, 209 (Bankr. S.D.N.Y. 2009).  "[T]he question of standing is whether the litigant is entitled to have the court

decide the merits of the dispute or of particular issues.  This inquiry involves both constitutional limitations on federal- court jurisdiction and prudential limitations on its exercise."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  "To establish Article III standing, a party must show (1) an injury in fact that is actual or imminent rather than conjectural or hypothetical, (2) the injury is fairly traceable to the conduct complained of, and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision."  Teligent, 417 B.R. at 210 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  "Prudential standing refers to the requirement that 'even [w]hen the plaintiff has alleged injury sufficient to meet the case or controversy requirement, . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"  Id. (quoting Warth, 422 U.S. at 499)).

In chapter 11 bankruptcy cases, parties must satisfy an additional standing requirement imposed by § 1109, which confers standing on a "party in interest."  This phrase has been interpreted to require that a party show that it has a "direct financial stake" in the outcome of the issue on which it seeks to be heard.  Id. (quoting Doral Ctr., Inc. v. Ionosphere Clubs, Inc. (In re Ionosphere Clubs, Inc.), 208 B.R. 812, 814 (S.D.N.Y. 1997)).  Furthermore, the Second Circuit has "rejected as incompatible with the purposes of the Code the notion that any particular creditor's interest may be asserted by anyone other than that creditor."  Krys v. Official Comm. of Unsecured Creditors (In re Refco Inc.), 505 F.3d 109, 117 (2d. Cir. 2007) (citing Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp), 698 F.2d 571, 573 (2d Cir. 1983)).

Here, PCMC lacks standing to make a motion to pursue the estate's claims against the Alleged Transferees under any of these standards.  PCMC has no "direct financial stake" in the

outcome of the litigation it seeks to bring against the Alleged Transferees, because, under the terms of the Plan, it will not receive any portion of any recoveries, and therefore lacks standing under § 1109 to seek authority to bring the litigation.  See Mihnlong Enters. v. Time Plaza, Inc. (In re N.Y. Int'l Hostel, Inc.), 157 B.R. 748, 753 (S.D.N.Y. 1993) ("[W]hile *creditors* may, in appropriate circumstances, have standing under Section 549 to avoid post-petition transfers, Appellants have cited no authority for the proposition that parties such as Appellants, who are not even creditors of the estate in bankruptcy, have standing to invoke the trustee's avoidance powers.").

For these reasons, PCMC also lacks Article III standing to seek authority to sue the Alleged Transferees on behalf of the estate.  PCMC cannot show any "injury in fact" resulting from the Plan Administrator's failure to bring claims against the Alleged Transferees, because PCMC has no right to share in the proceeds of any such claims or other sufficient financial interest in the outcome.

Notably, the Ficus Entities, the only parties that stand to benefit from any recovery on the claims PCMC proposes to assert, oppose PCMC's motion, and seek to enforce the Plan's provisions that specifically vests the Plan Administrator with the right to assert the Debtor's claims.  Under these circumstances, derivative standing is inappropriate.  As explained by the Second Circuit:

> The prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context.  Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself.  Third-party standing is of special concern in the bankruptcy context where, as here, one constituency before the court seeks to

> disturb a plan of reorganization based on the rights of third parties who apparently favor the plan. In this context, the courts have been understandably skeptical of the litigant's motives and have often denied standing as to any claim that asserts only third-party rights.

Kane v. Johns-Manville Corp., 843 F.2d 636, 644 (2d Cir. 1988) (citing, among other cases,

Kremer v. Clarke (In re Frank Fehr Brewing Co.), 268 F.2d 170, 179 (6th Cir. 1959), cert.

denied, 362 U.S. 963 (1960) ("[i]f the creditors are willing to accept less than they might

otherwise be entitled to, it is not for the common stockholders to insist that they not be permitted

to do so")).

If PCMC believes that any of the Alleged Transferees are jointly liable on the claims

asserted in the Adversary Proceeding and that it therefore has a right of contribution against any

of the Alleged Transferees, that right can be asserted in a third party complaint pursuant to

Bankruptcy Rule 7014. To confer derivative standing on this basis would mean that any

defendant in an adversary proceeding brought on behalf of the estate – even a defendant with no

other connection to the bankruptcy – could obtain authority to pursue claims on behalf of the

estate against potential co-defendants who were not sued. There is no authority, and no reason,

to permit a defendant to invoke the extraordinary remedy of derivative standing under STN to

obtain the relief available under Bankruptcy Rule 7014, or to circumvent that rule's requirements.

To the extent that PCMC seeks to assert claims against the Alleged Transferees to

highlight the fact that those parties have engaged in transactions that are "similar" to those that

are the subject of the Adversary Complaint, this interest is insufficient to confer standing to seek

authority to assert those claims. It would be inappropriate to permit PCMC to pursue litigation

where it has no economic stake in the outcome in an effort to obtain leverage in the Pauker

Adversary Proceeding.

In addition, PCMC's proposed claims pursuant §§ 544, 548, and 549 to recover various

pre-petition and post-petition transfers are untimely. Derivative standing must be denied for this

reason as well.

Section § 546(a) provides:

> An action or proceeding under section 544, 545, 547, 548, or 553 of
> this title may not be commenced after the earlier of--
> (1) the later of--
>> (A) 2 years after the entry of the order for relief; or
>> (B) 1 year after the appointment or election of the first trustee
>> under section 702, 1104, 1163, 1202, or 1302 of this title if
>> such appointment or such election occurs before the
>> expiration of the period specified in subparagraph (A); or
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

This bankruptcy case was commenced on April 17, 2007, and the trustee was appointed on

May 1, 2007. Therefore, pursuant to § 546(a), any suit to avoid the pre-petition transfers at issue in

PCMS's proposed derivative action must have been initiated by April 17, 2009. Because that the

statute of limitations for avoiding these transfers has expired, these claims are not colorable, and

PCMC's request for derivative standing to assert these claims must be denied. See STN, 779 F.2d

at 903 (derivative standing to assert claims of wasting corporate assets and fraudulent or preferential

conveyances was properly denied because the statute of limitations had expired).

PCMC's derivative claims to avoid a post-petition transfers pursuant to § 549 are also

untimely. Although the proposed derivative complaint is unclear with respect to the exact date of

alleged post-petition transfers of the Debtor's property at issue, the latest post-petition date specified in the proposed derivative complaint is May 21, 2007.[3]

Section 549(d) provides that "[a]n action or proceeding [seeking to avoid a post-petition transfer of estate property] may not be commenced after the earlier of--(1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed."  11 U.S.C. § 549(a).  Therefore, any action to recover a post-petition transfer made on May 21, 2007 must have been commenced before May 21, 2009.  Because the statute of limitations to recover any of the alleged post-petition transfers has run, the claim is not colorable.  This is an additional basis for denying PCMC's request for derivative standing to assert this claim.

---

[3] It must be noted that this date appears to be the date of a transfer of funds made from one of the Alleged Transferees' accounts, and not from the Debtor's account (which would have occurred at an earlier date).  However, for purposes of this motion, the Court will assume that this date is the date of the alleged post-petition transfers of the Debtor's property.

<u>Conclusion</u>

For these reasons, PCMC's motion seeking derivative standing to commence an action on behalf of the Debtor is denied.  A separate order will issue.



**Dated: Brooklyn, New York**
**January 8, 2010**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**